## C. W. HUMAN & JEFF HUMAN v. FRANKLIN GOODMAN.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, June 11, 1929.

J. W. Stone, of Harriman, for plaintiff in error.
Davis & Davis, of Wartburg, for defendant in error.

THOMPSON, J. The plaintiff below, Franklin Goodman, has recovered verdict and judgment for $150, against one of the defendants below, Jeff Human, a deputy sheriff, on account of a pistol shot wound inflicted on plaintiff by said defendant during a raid on an illicit still on September 28, 1925. Said defendant has appealed to this court and has assigned errors.

C. W. Human was the sheriff of Morgan county. Jeff Human, his son, was a deputy sheriff, and so were Verge Stevens, Willis Walker, Charlie Summers and John Foster.

Either on the night of September 27, 1925, or early on the morning of September 28, 1925, C. W. Human received information to the effect that the plaintiff, Franklin Goodman, and the plaintiff's half-brother, Lucas Lowe, were operating a still in the woods on Scutcheon Creek, about three or four miles from Wartburg. About ten or eleven o'clock on the morning of September 28, 1925, C. W. Human and his son, Jeff Human, and the other four deputy sheriffs above named started out to find the still. After wandering through the woods along Scutcheon Creek for some time, they came upon the still between twelve noon and one p. m. The still was in full operation. Plaintiff's half-brother, Lucas Lowe, was a very short distance from it working with the trough that carried the water to it. Plaintiff himself was immediately at the still. He testified that he had nothing to do with the operation of the still and was sitting there doing nothing—having come there merely to see Lucas Lowe. The officers testified that he was catching the liquor in a jug as it came out of the still. However this may be, plaintiff was convicted in the Federal court for his part in operating the still on this occasion.

When Lucas Lowe saw the officers, he ran and made his escape, and he has never been apprehended. At the time of the trial, his whereabouts was still unknown.

Plaintiff likewise ran. He ran down a hollow. He testified that he ran about 200 or maybe 300 yards; that he reached a point only about twenty-five or thirty feet from a bluff and ivy patch; that if he could have reached this bluff and ivy patch he could have gotten into a main hollow and could have gotten away; but that when he reached said point, Jeff Human, who was running along behind him and trying to catch him, shot him from behind with a .45 caliber pistol; that the bullet entered the back of his leg just above his knee and came out the front of his leg two or three inches above the knee. It rather appears, at least by implication, from the plaintiff's testi-

mony that Jeff Human would not have been able to catch plaintiff had he not shot him. But Jeff Human testified most positively that he could and would have caught the plaintiff; that he did not shoot to prevent plaintiff from escaping, but shot because plaintiff stopped, turned around facing him (Human), stuck his hand in the bib of his overalls as though to pull a pistol, and thinking that he (Human) was about to be shot, he pulled his pistol and shot the plaintiff; that the bullet entered the front of the leg and came out the back, etc. He was corroborated by the other officers who testified in his behalf.

So, it does not affirmatively and positively appear from plaintiff's testimony that he would have gotten away if Jeff Human had not shot him. It does appear affirmatively and positively from Jeff Human's testimony that plaintiff would not have gotten away had he not shot him, because Jeff testified positively that he could and would have caught plaintiff. We, therefore, take it as established that it was not necessary for Jeff to shoot plaintiff in order to prevent his escape, and, of course, there is no contention on the part of Jeff that it was. And the issue was whether plaintiff was still running away from Jeff when Jeff shot him from behind, or whether plaintiff stopped, turned facing Jeff and reached into the bib of his overalls as though to draw a weapon when Jeff shot him.

Since the plaintiff testified that he did not stop or turn facing Jeff or reach into his overalls, etc., but had his back to Jeff and was running away from him when he was shot, there was material evidence to support the verdict of the jury, and the assignments making that question will be overruled.

It is next insisted by the defendant that since plaintiff could not and did not testify that it was defendant, Jeff Human, who shot him (plaintiff being the only witness in chief in his own behalf), it did not appear when plaintiff closed his case in chief that it was defendant who had shot him, and therefore that the trial court should have directed a verdict in favor of the defendant on his motion therefor made at the conclusion of the plaintiff's case in chief. But defendant himself, testifying in his own behalf—as well as the other officers whom defendant put on the stand—testified that it was the defendant who shot the plaintiff. So, the defendant himself cured the defect in the plaintiff's case, and cannot now complain. See Railway & Light Co. v. Henderson, 118 Tenn., 284, where it is pointed out that where a defendant puts on evidence after his motion for peremptory instructions made at the conclusion of plaintiff's evidence has been overruled, the trial court and the jury must consider all of the evidence, and that it not infrequently happens that the defendant's evidence cures the defect in the plaintiff's case, etc.

The fifth and sixth assignments are as follows:

"5. The trial judge erred in overruling the defendant's fifth ground of his motion for a new trial, to-wit: Because the court erred

in permitting the plaintiff to prove, over the defendant's objection, that Hence Hicks had been shot in the back of the head by a sheriff's posse, when there was no proof that this defendant had any connection with this or was responsible for it in any way.

"6. Because the court erred in permitting the plaintiff to prove, over the defendant's objections, that one Virgil Jones had been shot by some unknown party at a time when he was running away from a still in Morgan county that was being raided by some deputy sheriffs, and at a time when neither of the defendants were present. This assignment constituted the sixth ground of defendant's motion for a new trial and should have been sustained by the court."

We do not find that the plaintiff was allowed to prove the facts as stated in these two assignments. To the contrary, the defendant himself and his witnesses testified, on cross-examination, as to the shooting of Hence Hicks and Virgil Jones. In other words, the defendant and one or two of his witnesses were merely asked some questions about the two said shootings on cross-examination, and the court permitted them to answer. A great deal of latitude is allowed in cross-examination, and after considering the record we do not think we would be justified in reversing this case on account of any errors of the trial court with reference to the introduction of evidence.

The remaining assignments are based upon the following:

The trial court in his charge to the jury stated the defendant's theory or defense as follows:

"On the other hand, if you should find in the attempt to make this arrest they ran a man away from a still where he was operating a still, that would be a misdemeanor committed in their presence and they would have the right to arrest this man and use sufficient force to effect the arrest, but no more. And if you should find from the greater weight of the testimony, the legal testimony, that this man Goodman was attempting to shoot Jeff Human, then Human would have had to act in his own necessary self-defense and would not be responsible. On that point, gentlemen of the jury, you will be the judges from all the facts and circumstances, looking to whatever interest you find that these defendants and the posse that was with them have in the trial, also whether or not the plaintiff, Goodman, is interested in the result of the trial. If you find for the defendant you will say not guilty. But if you find for the plaintiff you will go further and say what you think he is entitled to under all the facts and circumstances of the case, and what will pay him for the pain and suffering that he has gone through and will go through in the future. These matters are left in your sound discretion, and it is in your discretion whether you will give this man anything and if so how much."

It is urged that the latter part of the foregoing excerpt simply left it in the discretion of the jury to award plaintiff damages or not without regard to how they might find the facts. We do not think the jury could have so thought. The court used the word discretion in the sense of judgment. He was attempting to tell the jury that it was their duty to pass upon the evidence and contentions or theories of the parties, and to use their sound judgment in deciding, etc. We do not think the defendant could have been prejudiced by the latter part of said excerpt.

It will be observed that the foregoing excerpt, which contains all that the court said to the jury with reference to the theory of the defendant, bases his defense wholly upon the proposition that the plaintiff was actually attempting to shoot the defendant, which, of course, presupposes that the plaintiff was armed. It contains nothing about defendant's contention that he thought that the plaintiff was armed and was about to shoot him. Now, it is undisputed that the plaintiff was unarmed except for a small pocket knife in which the spring was broken. So, the defendant orally requested the court, in the presence of the jury, to charge them as follows:

"If from the facts even though Goodman had no pistol, he had turned toward—if they found he had turned toward the defendants and thrust his hand into his bosom in such a manner as to lead the defendants to believe that he had a pistol, and if they found from the facts he was shot in the honest belief that the plaintiff had a pistol, then they would not be liable."

In response to this request the court charged the jury as follows:

"I say, gentlemen of the jury, in connection with this suggestion, that if this man drew a pistol on Human as I have heretofore said, or have stated, or if Human honestly believed he was drawing a pistol on him, then he would have the right to shoot.

"But you will take that along with the other facts and circumstances whether he had a pistol and say whether or not he did put his hand in his pocket."

The adding of the last-quoted paragraph is the matter complained of.

It will be observed that in response to the request, the court told the jury that if plaintiff drew a pistol on the defendant or that if the defendant honestly believed that plaintiff was drawing a pistol on him, he had the right to shoot. It seems to us that in this connection it was at least not reversible error for the court to add that the jury should take into consideration all of the facts and circumstances and whether or not plaintiff had a pistol and whether or not he put his hand in his pocket.

If plaintiff did not have a pistol he could not have been drawing one on the defendant. And if he did not have a pistol it would seem unlikely that he would stop, turn and face the defendant and go

52 

through motions which would indicate to the defendant that he was drawing a pistol on him. And it should be remembered that the controverted question in the case was whether or not plaintiff did stop, turn facing the defendant and stick his hand into his overalls as though he were going to draw a pistol. So, it was certainly proper for the jury to consider in connection with the defendant's contention that he thought the plaintiff was drawing a pistol on him, the question of whether or not the plaintiff did put his hand in his pocket. The assignments will, therefore, be overruled.

It results that in our opinion there was no error in the judgment of the trial court, and the same will be affirmed, with costs.

All concur.